Based on today's docket, it is the case of Danica Watson, individually with Special Administrative Strength Order of the State of Darroch, and a student deceased, versus Danica Pikul, M.D. And we have Jonathan Andres for the appellant and the appellants. And we have James Van Ville for the appellate. You may proceed, Mr. Andres. Good morning, Your Honors. My name is Jonathan Andres, and it's my privilege to appear before you today on behalf of the appellant, Danica Watson. The court is being asked today to consider the appellant's argument that the proximate cause instruction given in a medical malpractice case was inadequate to instruct the jury on the plaintiff's theory of her case. And while that may seem like a different or unusual argument in light of precedent, it is not. It is not because this is an unusual case in terms of the facts, and I'll get to that in a minute. But I want to point out at the outset that the law of approximate cause has evolved since IPI 1501, which is the Illinois Pattern of Instruction on Approximate Cause, was adopted in 1961. Since 1961, and since IPI 1501 was adopted, we have seen the introduction of lost chance of survival come into the law and the judicial fabric in Illinois. And lost chance is not a separate theory of recovery, but rather a concept that enters into proximate cause analysis in medical malpractice cases where the plaintiff alleges, as we do here, that defendant's negligence or negligent delay in diagnosis or treatment of the patient lessens the effectiveness of treatment. IPI 1501 is out of sync with Illinois law when it comes to these kinds of cases. And here, the approximate cause instruction that was given to the jury... If we're out of sync, has the Supreme Court done anything to change the instructions? I'm sorry, Judge? If we're out of sync, has the Supreme Court done anything to change the instructions? The Supreme Court has recognized in Fulton that an appropriate instruction may be given where a case like this one allows the jury to speculate as to the cause of injury. Here, and this idea of an additional instruction has been recognized in Illinois court, in Illinois precedent. For instance, after Northern Trust came out with the concept of lost chance of survival, the Hagian decision in 1995, which we cite in our brief, recognized an instruction which properly sets out lost chance may be appropriate. Decisions subsequent to Fulton have agreed with Hagian. For instance, the 1998 decision of Henry, which we also cite, and the Landy decision in 1999 agreed with Hagian as well. But the approximate cause instruction in this case only allowed the jury to consider whether the doctor's conduct approximately caused the baby's death. In addition, the long form. The long or the short form, yes. There's no quibbling over whether the appropriate form, long or short, was offered. We have, as an attachment to our brief, submitted the proposed instruction that was rejected, which added language to the long form. There's no question, there's no dispute between the parties as to whether the long or short form should have been given. No, but you just said that the form that was given only allowed them to consider whether the doctor's negligence contributed. The long form adds, you know, it's not the only cause, it's the whole cause. Yes, well, let me explain what I mean by that. It can be in conjunction with other causes. The death was not the injury. The injury here was the effect that the doctor's conduct had on the baby's chance of survival. That's a very, very important point because it's not something that's communicated to the jury through 1501. The jury is asked under 1501 to consider any cause that in the natural or probable sequence caused the injury. Well, the jury is confronted with the baby's death, and the question is, well, did the doctor's conduct cause that death? Well, that's not the issue under lost chance of survival. It's the effect on the chance of survival that's at issue. And the jury was deprived of considering the plainness theory of the case, which very simply stated is whether the doctor's conduct approximately lessened the baby's chance of survival. Either through increasing the risk of injury or lowering the effectiveness of treatment. Did you argue that distinction to the jury? We argued that the instruction, well, we argued that the injury was that the doctor's conduct deprived the baby of a chance of survival. Okay. But if you notice, the quote that I started with comes from the decisions that we cite in our case where the lost chance is not a separate theory but an analysis that's injected. Before Holton came out, courts around Illinois said if you have less than a 50% chance of survival, you're not going to the jury. And the Curry decision illustrates this point well. And the reason, as the court said in that case, the traditional verdict proof would preclude recovery in such a case. Well, it's obvious because if the chance of survival is less than 50%, how can it be in the natural chronal sequence that the doctor's conduct caused the death or the injury? But that misses the point. The point is it's the diminished chance of survival that's the injury. And after Holton came out, we saw that the court there, the Illinois Supreme Court said, you may apply lost chance in cases where there's less than 50% chance of survival. But the Supreme Court also said that IPI 1501, the long form, does that. It only considers, well, I beg to, I want to draw a distinction because I read Holton slightly different than that general statement. I would submit that Holton said that the IPI 1501 long form was sufficient for the facts in Holton which included a chance of survival greater than 50%. If you read Holton, it's like the Supreme Court said, you know, as long as we're on this subject, another thing occurred to us. We're going to point out that you can apply lost chance of survival to cases where there's less than 50% chance of survival. And we quote quite extensively from Holton where they outline the confusion that they see among the courts and then they turn around and they say, well, let us clarify where there's evidence that the conduct diminished the chance or diminished the effectiveness of treatment or increased the risk of injury. We accept the Northern Trust's characterization of lost chance as being an accurate statement of the law. So, yes, Holton said 1501 was appropriate. But in that case, in the Holton case, where there was greater than 50% chance of survival, here, this is a unique case in the spectrum of proximate cause. Since Holton, I have not found a case, and we point this out in a brief, I have not found an appellate decision that has considered proximate cause instructions in a case pleading lost chance of survival where the chance of survival was less than 50%. All of the cases that have come after Holton are on the other side of 50%. So, in essence, this is almost a case of first impression on this very technical point but very important point to my client because Holton leaves us with a question mark. Yes, 1501 does, the long form does apply where you have greater than 50% chance of survival. But there, the Holton decision also talks about the speculation that results. And the court says, well, you can, speculation, you can handle that by giving an appropriate instruction without answering the question of what is an appropriate instruction. However, Holton does answer the question indirectly by saying that they agreed with the reasoning in Northern Trust which laid out, Northern Trust said that evidence which shows for reasonable certainty that negligent delay in diagnosis or treatment less than the effectiveness of treatment is sufficient to establish proximate cause. And if you look at our proximate cause instruction, we adopted it from the Lange decision, and it is in our appendix A, and I won't bore the court with a reading of it, but we lay out all of those elements that establish proximate cause. Let me illustrate my point this way. Imagine you have a baby in a stroller that is rolling on an incline towards a cliff and it's going to go off the edge of the cliff if someone doesn't do something. However, everyone agrees that there's a small chance of survival, there's a small chance that the stroller will stop before it hits the cliff, even if nobody does anything. Now, the doctor in this example is obligated to step in and either stop the stroller or do what's best to prevent the stroller from rolling over the edge. Now, this is what's very important in our argument in the theory of the case, that the doctor's conduct lessened the chance of survival. Imagine in my example, the doctor steps in but doesn't start soon enough. She delays in going after the stroller and the stroller goes over the edge. Imagine alternatively that the doctor steps in and reaches the stroller but accidentally, negligently pushes it a little faster towards the edge of the cliff and it goes over. The baby dies, but the issue is not whether the doctor's conduct caused the baby to die. The issue is whether the doctor's conduct decreased  of not dying. Of not dying, exactly. And that is what is so, I am passionate about this because I believe that when you read Holden and you read these decisions, you see that there's this very narrow exception or very narrow introduction of an additional analysis that's vital in a case where there's less than 50% chance of survival. Curry lays it out in the converse. They're not going to let a jury consider that kind of case because there's less than 50%. The traditional burden of proof would preclude recovery in such a case. That's what they said. And that means that IPI 1501 wouldn't be sufficient to allow a jury to find a proximate cause. I understand this argument, but we don't change the IPI. And you can give a non-IPI note, but it's an abuse of discretion standard. And you have to show it doesn't adequately... Well, let me address that. The reason IPI 1501 is not adequate, it's adequate as far as it goes, but because lost chance of survival in a medical malpractice case, as I said before, I just quoted from the cases that we cite, introduces a concept into the proximate cause analysis that didn't exist before. And that is, in a medical malpractice where the plaintiff alleges that the defendant's negligent delay in treatment either or diagnosis lessened the effectiveness of treatment, you have to add to the proximate cause instruction. You have to inform the jury of this additional analysis. Even the appellate courts didn't get it right before Holton clarified the landscape. So how would a jury know and be instructed in the law of Illinois that if they find that the doctor's conduct or delay in treatment or diagnosis lessened the effectiveness of treatment, how would they know that that's efficient to establish proximate cause? They don't, unless you have that instruction added to the 1501. I am not here to suggest that 1501 should be done away with. You don't think you can argue that to the jury? I don't. Because it still says that something else can contribute to it. So you can. What would prohibit you then from arguing this small chance, this percentage chance? Two things, at least, Judge. Number one, as the attorney standing up arguing to the jury, that if you find that the doctor's conduct lessened the effectiveness of That's nowhere in the instruction. And here's why it's important that it be in the instruction. When you have less than a 50% chance of survival and you're looking at the proximate cause instruction as a lay person, a juror, and it says any cause that is a natural or probable sequence caused the injury complained of, they're looking at the death. And they're saying, you know what, this baby died. In our case, there was a very small, the testimony was, there was a very small chance of survival. That means there was a very great chance the baby would have died if the doctor had done nothing. Let me ask, you're focusing on the first sentence of the instruction. Weren't you given the opportunity to argue your theory to the jury on the basis of the last sentence of the instruction, that it's sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury? And your argument to the jury essentially, I haven't had a chance to read the record yet, but your argument to the jury was the loss of this chance concurred with these other situations which caused the injury complained of, and that was your basis for the court to allow you to make your argument. So why isn't it covered under those circumstances? It was insufficient for this very reason, Judge, because the death was not the injury. The injury was the decrease in the chance of survival. And why that's important is because, you know, How does that change, and I'm sorry, but I'm confused by that argument. How does that change if it's more or less than 50 percent? I mean, the baby died. Yes, if something in the natural or probable sequence. That's the framework that the jury is asked to consider. So the jury has evidence in front of them, which presumes to you that there was a very small chance of survival, i.e., very great chance that the baby would die. In the natural and probable sequence, what was going to happen? The baby was going to die. So how could the doctor's conduct in the natural or probable sequence be a proximate cause of the baby's death, the baby's injury? But the death is not the injury. The jury has to be clarifying. And because Holton had to come out and clarify this for Illinois courts, is my very point, and when they went so far as to expand application of lost chance for less than 50 percent cases, they suddenly opened up an uncertainty. While they clarified it for the bench and bar, they opened up an uncertainty in the proximate cause instruction in 1501. 1501 has to be supplemented so that the jury understands that natural or probable sequence refers to the decrease in the chance of survival. What happened when the doctor reached for the stroller? Don't worry about what happened after that. What happened when the doctor reached for the stroller? Did something happen that decreased the chance of survival? And I submit, yes, a delay in treatment would decrease that chance or a negligent push hastening the demise would be that very thing. And it is a technical point, and it is one that is not readily apparent. Well, it is very complex. But what about the fact that the IPI committee has had opportunity since these cases to, and actually I think I was on the 2000 edit, they've had an opportunity to correct this error since the lost chance doctrine has come out. I don't think it's an error as much as it hasn't been brought to the surface. Since Holton, there's been Henry, Landy, Sinclair, and Cetera. Those have been the decisions where this lost chance and the jury instruction issue has been cited. If there's more, I couldn't find them. Maybe opposing counsel will point them out. I doubt it. We've talked about this. But in each of those cases, the chance of survival is greater than 50%, and the argument was based on things that I'm not talking about. I'm introducing a wrinkle to this discussion that doesn't exist in the current reported appellate decisions in Illinois. And Holton, while it said 1501 is the appropriate long form for that case, went on after that discussion and then said, while we're at it, we're going to apply lost chance of survival to less than 50% cases, but then never filled in the blank on what the instruction would be. Haitian recognizes that an appropriate instruction on lost chance might be appropriate. I mean, courts recognize in theory that a lost chance instruction might be appropriate. And maybe the issue is made easier if instead of supplementing 1501, if I had said, well, in addition to proximate cause, I now want to introduce a lost chance of survival instruction, you know, based on the case law. So that it's not- A definition, perhaps. What's that? A definition, perhaps. Yes, well- But you didn't do that, so that's not before us. No, but what I'm saying, it's a distinction without a difference, because the instruction that I wanted to give, whatever you put at the top of the title, is proximate cause may be established by proving or showing that defendant's conduct increased the risk of harm to the plaintiff or lessened the effectiveness of the plaintiff's treatment. And that came right out of Lambie, where the court said, well, that may be an accurate statement of the law. I don't know what the court meant by the word may. In other words, it is, but regardless, or whether it says it's a possibility. I don't know how may is used in that context. But I think it's clearly supported by Northern Trust, Houghton, everything else, that that is an accurate statement of the law in Illinois on the issue of lost chance of survival. And I think I said everything that I came here to say, and perhaps a little more, but I want to leave you on my direct with this overarching principle. The injury here, the injury that has to be decided on proximate cause basis, or whether the doctor's kind of proximate cause something, is the decrease in the chance of survival, not the death. And to a jury, that's one of them. I could argue all day with a jury on that. And when they read natural problem sequence and they hear there was very little chance of survival, I'm telling you, they were confused. That's my, you know, I'm submitting that to the court as I was there. I saw some puzzled looks. And we point out our brief. The defendant did a very good job of standing up and muddying the waters by saying, you're not going to find any instruction that says that it's more probable than not that the baby would have survived. Or you're not going to find any evidence of that. No kidding. We agree. Houghton said no one can divide, no one in this courtroom, in fact, can tell whether the baby would have survived if the doctors had done something better. And so that's where we are, and I appreciate the court's question. You'll have the opportunity for rebuttal, Mr. Houghton. Thank you. Mr. Mendillo. Good morning, Your Honor. Good morning. Mr. Mendillo, let me ask you the converse of what I was harassing your opposing counsel about. Yes, sir. Given the last sentence of 1501, given the proposed instruction, modified IPI, that I think accurately states the holding in Sinclair, and the concept that a party is entitled to instructions that reflect their theory of the case, and basically bringing the instruction to the particular theory of the case, why isn't it an abuse of discretion for the trial court not to have given the modified 1501? You mean modified the long form? Modified long form, that's correct. Well, Your Honor, the only thing I can say on that is that Sinclair, that language that he added is from Sinclair v. Berlin. Right. It's right on there. Sinclair, they tendered it. The court refused it. The appellate court affirmed it, and the Supreme Court refused to take the case. So the Supreme Court was saying, you know, that language shouldn't be in there. At least the appellate court said it, and the Supreme Court determined not to take the case. Now, 10 years later, the Satara case was decided, and it was also a lost chance case. It gave the same basic language, and the appellate court said, this court has consistently affirmed refusals of similar, proper, nonstandard instructions because IPI civil third, number 1501, properly states the law in lost chance medical malpractice cases, Sinclair v. Berlin. The trial court is required by Supreme Court Rule 239 to use IPI instructions whenever it's applicable. Moreover, lost chance is not a separate theory of recovery, but rather a concept that enters into proximate cause analysis in medical malpractice cases when a plaintiff alleges the defendant's negligent delay in diagnosis or treatment has lessened the effectiveness of treatment. And what's that case? I don't remember. That is Satara. Did you cite that? Satara v. DeFilippo, Your Honor. Okay. It was tomorrow, 4th, 11th, 3rd, 20th, and that was decided in 2010, and then the petition for leave to appeal was denied in November of this year after the briefs were filed in this case. Petition was denied. So 10 years later, the Supreme Court, again, refused to take. As the court, Justice Chapman, pointed out, the committee has not seen fit to change the instructions. The Supreme Court hasn't changed the instructions. The Supreme Court has had two opportunities to take this case, this issue, and has refused. In fact, in this case, the plaintiff asked the Supreme Court to take the case directly by passing the appellate court because the appellate court's rulings have been consistent. The Supreme Court refused to take it in this case. And then we filed the briefs here, but the Supreme Court has had many opportunities to take the issue and has refused to do so. I'd like to expand on this a little bit. The plaintiff mentioned that it's not the death, but he was able to argue, and this is where there's no prejudice, he was able to argue to the jury that it need be any cause, any cause, and the plaintiff was entitled to a verdict. And he gave to the jury a pie, a description of a pie, this one slice of a pie which represents 1%. And he's entitled to recover for the death. He didn't say he was asking to be recovered for that decreased chance or for that increased risk of harm. He was asking to – he asked the jury for $3 million to compensate him for the death of the child based on 1%. He said even if it's 1%, I mean, the child only had a 5% chance if by the only doctor who quantified it, which was Dr. Storch, who was the infectious disease expert from Washington University. He said 5% chance when he hit the emergency room if everything had been done immediately, which did not need to be done in our view, but, you know, that would be a 5% chance. So 5% to 4%, is there – I mean, there's always a lessening. You can argue this in almost any medical case. If treatment had been rendered five minutes earlier, if a shot had been given five minutes earlier, well, it would have increased the effectiveness. It would have decreased the likelihood of harm. You can make that argument in any case, almost any case. But – and we filed a motion for directive verdict on that issue, and it was denied. But then the jury came in and ruled in defendant's favor, and we're happy with the jury verdict. We think it's correct. But the plaintiff did argue to the jury. There was a small chance of – I'm quoting – there was a chance of survival. You heard from Dr. Storch, 5%. You heard from Dr. Weber, a low chance, a small chance. In any event, there is a chance, and that's what we're here about. If you think of a pie chart and you have a 5% chance, and if that chance goes down at all because something Dr. Bickel did in this case, failed to give rosepin, failed to give IV fluids, whatever, if you find that goes down at all, you have to fine for the plaintiff if you find the defendant was negligent. I mean, he argued – he was able to argue his theory of the case to the jury completely and argued for the full amount of damages, which really, the proximate clause instruction, long form, 1501, in my opinion, is harmful for the defense. It's a plaintiff's instruction. But it's the law, and it's what Judge Gleeson gave. And to say that he somehow abused his discretion when he's got the Supreme Court denying petitions and four appellate decisions that say no, the very case that he relies on, Sinclair v. Berlin, which he relies on for the added language, refused the language and was affirmed. This law case has a long and tortuous history. I think it's generally recited in our brief. I think it's 11 years old now. It's been mistried once, dismissed later, without prejudice, refiled, finally tried, and this is where we have one issue and one issue alone. And it's an instruction that the law says is the proper instruction. And Judge Gleeson really had no choice but to give the instructions that he gave, the proximate clause instructions that he gave. And then in terms of to find that he abused his discretion by following what the cases are, to me is disingenuous. I mean, the case law is there. Sinclair is there. It says you don't give it. But in addition to that, the plaintiff has shown no prejudice. He's given wide latitude to argue his case to the jury. He was able to argue his Schroeder analogy. He's saying it's not the death, it's the increased chance. But he was able to ask the jury for the death. He was able to say to the jury that it was the death. And the instruction says if it's any cause, if that stroller, if you're pushing it, is 1% of it going off the cliff, you can recover. That's what he was able to argue. So his own Schroeder analogy misses the point. He's saying if you touch that thing and you give it 1%, that this instruction doesn't cover it. But it does cover it. It says any cause. It need not be the last cause. It need not be the nearest cause. But any cause. And that's what he was able to argue. And effectively, and this stuff without seeing confusion on the jurors and all that, I'm sorry, but I didn't see any of that. I don't think they were confused at all. And I think if you read Judge Gleason's comments at the post-trial motion, he acknowledged the case was fairly tried, the parties got a fair trial, and that the proper instructions were given. I think I've pretty well covered my point. I will point out one other thing I'd like to point out, is that in the foreword to the instruction book, there's a comment about instructions. And it talks about the major policy of the committee and of these instructions, and that they want the court to use, it says, the court will, in understandable language, fairly state the law, permitting counsel on each side to supply the adversary emphasis rather than try to neutralize partisan instructions, sounding first like plaintiff's counsel, and then the next sentence like defense counsel. In brief, on many occasions when the committee has rejected an instruction, it has felt not so much that the point ought not to be told to the jury, but rather it should be told to the jury by counsel rather than by the court. And that's exactly what happened here.  His own expert was allowed to testify. He gave an opinion on the ultimate issue, that it was approximate cause, that the alleged negligence was approximate cause of the plaintiff's death. Not only increased harm, he said it was approximate cause of the death. He was permitted to say that, permitted to argue. And the instructions are intended to be the basics that we give, and then the lawyer's argument in addition to that. I feel that the plaintiff and the defendant had a fair trial here. I don't see there's any basis for reversal. I think Judge Gleeson gave the appropriate instruction. He refused Sinclair just like the Sinclair case itself did, and I think the matter should be affirmed. Unless the court has questions, I think I've covered it. Thank you, Mr. Mandula. Thank you. I want to point out the distinction between argument and the right to have the jury instructed on our theory of the case. Clearly, you have the right to argue with the jury, and that's undisputed. But as we cite on page 5 of our brief, a plaintiff has the right to have the jury instructed on their theory of the case, and that does not mean the theory of liability. It means how each party frames the issues, and we frame the issues as it decreased the effectiveness of treatment or increased the risk of harm, that being the doctor's conduct, and we are entitled to a jury instruction that fairly reflects our theory of the case, the framing of the issues, to the extent it's consistent with Illinois law. And that instruction is entirely consistent with Illinois law. The question is, however, does the instruction that stands adequately also put forth something that encompasses your theory of the case? And I submit that it does not. I know you submit that you don't. Well, it doesn't. I mean, it talks about any cause. It may not be the last or nearest cause. What is not there that you think should be there, other than your language that you've submitted that was rejected? Sure. It says that it is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury. Well, the jury was only instructed as to the injury being death. The jury was not instructed as to the injury being the decrease in the effectiveness or the lessening of the chance of survival. But isn't that your ñ you keep saying loss of life. Isn't that really saying that your injury is a decreased chance, a slight increased chance that the child won't die? And so you're really talking about the same thing. I mean, I'm having a lot of ñ I know it's an esoteric concept, but if it's a small percentage of chance that the child won't die unless there's this negligence on the behalf of the doctor, those are your damages that the child had that increased slight increase of death because of the negligence of the doctor. Let me take it in two parts. If we look at the injury as death, and we look at the proximate cause instruction, the jury is being asked, do you believe that what the doctor did in light of there being a very large chance the baby was going to die before the doctor did anything, do you think that the doctor's conduct in the natural or probable sequence caused the death? In combination with ñ you can't just isolate that. But in combination with any other cause. Here's the point. If it's more probable than not that the baby was going to die, then the natural or probable sequence is that the doctor's conduct made no difference in the death of the baby because the natural probable result here is the baby's death. No one, though, as Holton points out, can define who survives and who doesn't, and that's why less than 50% chance of recovery is fair game for a cause of action or lawsuit like this because it would motivate physicians not to do their best if they figured, well, since it's only a small chance of survival anyway, I'm off the hook. I don't have to do my best. So is it your position if the word probable wasn't in there, it would be adequate? Natural or probable. I mean the ñ and let me go to the second half of my answer to your question. If we look at the injury as the decrease in the effectiveness of the decrease ñ the injury to the chance of survival, then the doctor either pushing the stroller or not getting there fast enough is within the natural or probable ñ I mean, naturally, what would you think would happen if a doctor pushed the stroller towards the clinic? Well, the baby would go over the edge. If the doctor waited too long to go get the stroller, what's the natural probable ñ you know, is that a natural probable event in that sequence that her conduct approximately caused a decrease in the chance of survival? The answer is yes. But because that distinction isn't ever laid out in the instruction, and because plaintiffs are entitled to an instruction that lays out their theory of the case, how they frame the issues, we're talking about a denial of rights to the plaintiff that exists under Illinois law, and that's why this instruction is so important. I appreciate the term esoteric, but I want to put it brighter lights than that because it's the heart of the case here. Well, it is the heart of the case, too, and I appreciate that aspect of, you know, the mountain you have to climb, but, you know, we're presented with just ñ with a more generic question of whether or not this adequately covers your theory. And the natural probable sequence applies to all the causes. It's the induced injury complained of, and then with some other cause acting or at the same time in combination with it. So the instruction causes the jury to speculate as to ñ well, if the doctor, you know, hadn't acted, the baby would have probably died anyway. We all heard testimony that there was only a 5% chance of survival. How could the doctor's inactivity be a proximate cause for her conduct? So those are my points. I appreciate it. Thank you, Mr. Alvarez. Mr. Mandello, Caprice, and Argument, we'll take the matter under a tie.